

Colin Prince
Chief Appellate Attorney
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Stephanie Beasley

# United States District Court
Honorable Rosanna M. Peterson

| | |
|---|---|
| United States, | No. 22-cr-146-RMP |
| Plaintiff, | Sentencing Memorandum |
| v. | |
| Stephanie Beasley, | |
| Defendant. | |

# I. Introduction

This Court does not often sentence a high-school valedictorian. It will here. How does someone like Ms. Beasley find herself a federal felon? The answer is sadly commonplace: a childhood scarred by emotional and sexual abuse leading to addiction, poverty, and desperation.

Ms. Beasley understands that she betrayed her employer and harmed numerous people. She makes no excuses. The question is what sort of penalty is just. One fact leaps out: Ms. Beasley will be, by virtue of this conviction, a felon for life. That penalty alone, which will leave her struggling to qualify for jobs and housing for decades, is harsh.

She remains homeless, but is working for Catholic Charities and ready to begin repaying restitution. Ms. Beasley respectfully asks the Court to impose a sentence of probation, restitution, and three-years supervised release.

# II. Background

Ms. Beasley's background isn't complicated. But a few key events are worth highlighting because they underlie the problems she has encountered in her adult life.

*First*, Ms. Beasley's childhood was marked by emotional, physical, and sexual abuse, precursors to adult substance abuse and crime. Her stepfather drank heavily, told her she was worthless and said she was "the source of all the world's problems,"

as Ms. Beasley put it. And as the PSR notes, Ms. Beasley's stepfather repeated choked her.[1]

The abuse continued at the hands of her stepbrother. When Ms. Beasley was 4-years old, she was sexually molested by her teenaged stepbrother, who was prosecuted for the offense.[2]

***Second***, Ms. Beasley lost both parents relatively young. Her father died when she was just a small child.[3] But it was her mother's death when Ms. Beasley was 21-years old that caused her world to fall apart.[4] During the PSR interview, at the mention of her mother, Ms. Beasley immediately became visibly emotional, telling Probation that she had "always wanted to be like her mother."[5] Mother and daughter were inseparable—Ms. Beasley recalled that she would telephone her mother during every break at work. Ms. Beasley said her mother "was my world"; when she died, "I lost everything that was me. I don't know, she just . . . I feel like a piece of me broke when she died."[6]

---

[1] PSR ¶ 50.

[2] *See* PSR ¶ 52.

[3] *See* PSR ¶ 48.

[4] *Id.*

[5] *Id.*

[6] These quotes are Ms. Beasley's statement during the PSR interview.

***Third***, her childhood trauma and the all-encompassing grief following the loss of her mother left Ms. Beasley struggling to cope, and she fell into a methamphetamine addiction that she still can barely bring herself to talk about. By the time of her offense, Ms. Beasley was nearing homelessness, living in a friend's spare room, which was really nothing more than a sort of nook separated from the living room by a hanging bedsheet strung wall to wall. Her addiction was siphoning away her paychecks, and Ms. Beasley was left desperate.

So she turned to fraud. The Court may have noted, in reading the PSR, where all the money was spent: food.[7] Ms. Beasley fraudulently used credit card numbers to order nearly $15,000 in food from Treehouse Deliveries, a centralized delivery service for numerous Spokane restaurants.

* * *

After the crime was uncovered and Ms. Beasley was fired from Sound Telecom, she lost her housing and has been homeless since. She lives in her car.

To her credit, Ms. Beasley has stayed employed: she now works full time with Catholic Charities.

---

[7] *See* PSR ¶ 21. There is also a $311 charge to a company called Purse King. *Id.* Ms. Beasley didn't buy the purses—her roommate did. The roommate figured out that Ms. Beasley was using false credit card numbers and used those same numbers to buy herself purses. However, Ms. Beasley accepts responsibility and the restitution—after all, the roommate would never have had access to the credit-card numbers if Ms. Beasley herself hadn't been using them.

## III. Discussion

At sentencing, courts should impose only what is necessary to achieve the Sentencing Reform Act's goals—and nothing more: "a substantively reasonable sentence is one that is 'sufficient, but not greater than necessary.'" *U.S. v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (quoting 18 U.S.C. § 3553(a) (emphasis added)). Although guideline ranges are relevant, courts "may *not* presume that the Guideline range is reasonable." *Gall v. U.S.*, 552 U.S. 38, 49–50 (2007). While considering guidelines, courts focus on the goals of sentencing: deterrence, retribution, incapacitation, and rehabilitation—the guidelines, as Justice Stevens, one of the original guideline authors, noted, are "truly advisory." *See* 18 U.S.C. § 3553(a)(1), (2)(A)–(D);[8] *see also Rita v. U.S.*, 551 U.S. 338, 366 (2007) (Stevens, J., concurring). Courts are "free to make [their] own reasonable application of the § 3553(a) factors, and to *reject* (after due consideration) the advice of the Guidelines"—which should not have "any thumb on the scales." *Kimbrough v. U.S.*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring) (emphasis added).

---

[8] "Deterrence, incapacitation, and rehabilitation are prospective and societal—each looks forward and asks: What amount and kind of punishment will help make society safe? In contrast, retribution imposes punishment based upon moral culpability and asks: What penalty is needed to restore the offender to moral standing within the community?" *U.S. v. Cole*, 2008 WL 5204441, at *4 (N. D. Ohio Dec. 11, 2008).

## A. The Court should impose a sentence of probation and three-years supervised release.

Ms. Beasley believes a sentence of probation followed by 3-years supervised release satisfies the Sentencing Reform Act's goals: retribution,[9] deterrence,[10] public safety,[11] and rehabilitation.[12] That is true for five reasons:

*First*, both the community and Ms. Beasley are best served by treating her addiction. Based on decades of research, we know that it is supervision and treatment that most effectively deter recidivism—not prison. *See* Wash. State Inst. for Pub. Pol'y, *Evidence-Based Public Policy Options to Reduce Future Prison Construction, Criminal Justice Costs, and Crime Rates*, Ex. 4 at p. 9 (October 2006) (while prison drug treatment programs reduce recidivism by only 5.7%, community drug treatment reduces recidivism by 9.3%, and treatment-oriented intensive supervision reduces recidivism by 16.7%); *see also* Am. Psych. Assoc., *Inmate Drug Abuse Treatment Slows Prison's Revolving Door* (Mar. 23, 2004) (in 1999 study, after undergoing in-prison drug-treatment program and aftercare, only 27% of prisoners recidivated versus 75% for

---

[9] Commonly referred to as the "retribution" factor, the Sentencing Reform Act requires courts to consider the "seriousness of the offense," the need to "promote respect for the law, and to provide just punishment." 18 U.S.C. § 3553(a)(2)(A).

[10] The Sentencing Reform Act requires that courts impose sentences that are sufficient, but no more than necessary, to "deter[] . . . criminal conduct." 18 U.S.C. § 3553(1), (2)(B).

[11] The Sentencing Reform Act requires courts to impose a sentence "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

[12] The Sentencing Reform Act asks courts to consider "needed educational or vocational training, medical care, or other correctional treatment" in imposing sentence. 18 U.S.C. § 3553(a)(2)(D).

those not undergoing treatment). Probation will ensure that Ms. Beasley remains sober and working and hopefully helps find her housing.

*Second*, a prison sentence will serve no deterrent purpose. Indeed, DOJ's own research, via the National Institute of Justice, shows that "the *certainty* of being caught is a vastly more powerful deterrent than the punishment."[13] That is common sense: people may pause before they commit a crime if they believe they may be caught. But nobody rationally weighs sentence-length beforehand—i.e., they do not think, "if I'm likely to receive probation, I'll commit the crime, but if I'm like to receive six months, I won't." That line of reasoning presupposes the rather absurd notion that a would-be criminal knows and understands the federal sentencing guidelines. Deterrence simply does not work that way. And sentencing Ms. Beasley to incarceration will serve no general deterrence purpose.

As for specific deterrence, a felony conviction is enough. Ms. Beasley has no criminal history and not a single pretrial violation. And she has given the Court every reason to believe she will avoid future crimes: Ms. Beasley resolved this case *pre-indictment*—she answered the government's target letter, obtained counsel, reviewed the discovery, negotiated the plea agreement, and waived her right to indictment, all

---

[13] Dept. of Justice, Nat'l Instit. of Justice, *Five Things About Deterrence* (June 5, 2016) (https://bit.ly/2XA9g2s); *see also* Hon. William H. Pryor, Jr., *Return to Marvin Frankel's First Principles in Federal Sentencing*, 29 Fed. Sent. Rep., at 95, 2017 WL 1041187 (Dec. 1, 2016) ("certainty and swiftness in punishment are more important than severity in punishment") (citation omitted).

before she was even charged. She has taken full responsibility for her conduct every step of the way.

*Third*, Ms. Beasley has a job and needs to pay restitution. A sentence of probation puts Ms. Beasley on the path to repaying the victims swiftly. A prison sentence achieves the opposite.

*Fourth*, a felony conviction is itself a harsh—and lasting—consequence. As a result of this conviction, Ms. Beasley will forever earn less money, find jobs and housing more difficult, and be barred from all kinds of benefits non-felon Americans enjoy. According to a report by the American Bar Association and funded by the Department of Justice, felony convictions "adversely affect adoptions, housing, welfare, immigration, employment, professional licensure, property rights, mobility . . . and undermine[] meaningful reentry of the convicted *for a lifetime*."[14] That cannot be surprising given that "87% of employers conduct background checks," and "most employers [surveyed for the report] are unwilling to hire applicants who have served time in prison."[15] And when formerly-incarcerated people find work, they are paid much less. "[P]ay cuts are staggering: formerly incarcerated men take home 40% less

---

[14] Am. Bar. Assoc., *Collateral Consequences of Criminal Convictions Judicial Bench Book* at 4 (Mar. 2018) (https://bit.ly/3ZqwLbC) (emphasis added).

[15] *Id.*

pay annually" than those without felony convictions.[16] The effects of a felony on housing are similarly bleak: "[m]ost landlords use background and credit checks to screen out prospective tenants with criminal records."[17]

When Ms. Beasley requests a sentence of probation, it is not a lenient sentence. It is a sentence that she will bear for a lifetime.

*Fifth*, Ms. Beasley's traumatic upbringing does not excuse her crime, but the Court can rightly consider childhood abuse as a mitigating factor. Recognizing that childhood abuse can lead to addiction and crime, the Ninth Circuit has held that "in extraordinary circumstances," childhood abuse alone—without rehabilitation—justifies a lower sentence. See *U.S. v. Roe*, 976 F.2d 1216 (9th Cir. 1992) (granting below-guideline departure in extraordinary case of child abuse). The court noted the long-lasting effects of such abuse: "The psychological effects of child abuse manifest themselves in a variety of ways . . . profound feelings of inadequacy, isolation, confusion, low self-esteem, and guilt." *Id.* Put another way, it is no mystery why so many criminal defendants arrive for federal sentencing with these sorts of backgrounds—childhood abuse like that suffered by Ms. Beasley puts people through no fault of their own on a path to addiction and crime.

---

[16] *Id.* at 5.

[17] *Id.* at 5.

### B. The Court should impose no financial penalties.

The Court should impose restitution in the amount of $15,304.83, with interest waived.[18] But additional financial penalties would only impede Ms. Beasley's recovery, and she respectfully asks the Court to impose no fine.

### IV. Conclusion

For the reasons stated above, Stephanie Beasley respectfully requests a sentence of probation followed by three-years of supervision.

---

[18] *See* ECF No. 18 at 11, 13 (Plea Agreement).

Dated: March 1, 2023.

Federal Defenders of Eastern Washington & Idaho
Attorneys for Stephanie Beasley

s/Colin G. Prince
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Colin_Prince@fd.org

### Service Certificate

I certify that on March 1, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Michael Ellis.

s/Colin G. Prince
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Colin_Prince@fd.org